**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) No. 05 C 2353 |
| v. | ) |
| | ) |
| MACK GARCIA, | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendant-Petitioner. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Mack Garcia's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 is before this court. For the following reasons, the motion is DENIED.

**I. BACKGROUND**

Garcia, along with 13 individuals loosely associated with the Gangster Disciples street gang, was charged in a 36-count indictment for offenses related to a cocaine-distribution ring operating from 1995 to July 1999. *See United States v. Jackson et al.,* No. 99 CR 545 (N.D. Ill. 1999). At his trial, two of Garcia's coconspirators, Raphael Williams and Alex Kinsey, testified about Garcia's involvement in the drug ring, and the jury heard over twenty recordings of Garcia discussing drug deals on a wiretapped phone. Kinsey testified, among other things, that Garcia sold him one kilogram of cocaine in November 1998, and recorded phone calls corroborated his testimony. (Trial Tr. II at 119-21.) Williams, too, testified that he bought powder cocaine from Garcia in 1/8-kilogram quantities between September and December 1998. (*Id.* at 206-07.)

Before Williams testified, the court excused the jury to allow the parties to question Williams about his mental-health history, which included a 45-day hospitalization in 1997 following a diagnosis of paranoid schizophrenia. (Trial Tr. II at 156.) At the end of the hearing, the court denied Garcia's request for permission to impeach Williams's testimony based on his mental-health history, reasoning that Garcia did not offer any evidence that Williams's condition might impair his ability to recollect events or otherwise diminish the credibility of his testimony. (*Id.* at 158.)

The jury returned a guilty verdict against Garcia on one count of conspiring to possess and distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), two counts of possessing cocaine with intent to distribute, *id.* § 841(a)(1), and one count of using a telephone in the commission of a drug-trafficking offense, *id.* § 843(b).

After reviewing Garcia's criminal history, the probation officer recommended in his presentence investigation report (PSR) that Garcia be sentenced as a career offender under the guidelines. *See* U.S.S.G. § 4B1.1. The probation officer based his recommendation on Garcia's three convictions for possessing with intent to distribute cocaine following arrests dated March 4, 1993; May 3, 1993; and April 26, 1994; and a conviction for delivering cocaine following an arrest on March 25, 1996. (R. 399 at 6.) Garcia was convicted of the two 1993 offenses on July 19, 1993; he committed the 1994 offense while serving the probation portion of his combined sentence for those convictions. (Sent. Tr. 13.) Garcia was convicted of the 1994 and 1996 offenses on February 26, 1997. (Pet'r's Br. 3.)

Garcia (through his attorney, William Huyck) contested the career-offender recommendation in a written memorandum and at the sentencing hearing. He argued that the

1996 offense should not count because it occurred during the time of the charged conspiracy. (R. 399 at 6, 10-11.) And, relying on *United States v. Garecht*, 183 F.3d 671, 674 (7th Cir. 1999), he argued that the 1993 and 1994 offenses also should not count because they involved the same course of conduct as the conspiracy charged in the indictment. (*Id.* at 7-8.) *See* U.S.S.G. § 1B1.3, cmt. n. 9. Garcia noted that Kinsey and Williams both testified that the same relationship among the charged conspirators was in effect in 1993 and 1994, and that the offenses all involved sales of small packets of cocaine from the same suppliers in and around 72nd Street and Western Avenue in Chicago. (*Id.* at 9-11.)

In ruling that Garcia qualified as a career offender, the court noted that Garcia's earlier offenses occurred before the dates of the charged conspiracy, involved crack rather than powder cocaine, involved small street-level sales, and did not involve communication devices. (Sent. Tr. 27-28.) But the court ultimately concluded that, even if the prior offenses could be considered part of the same course of conduct as the charged conspiracy, Garcia's intervening sentences, imposed in 1993 and 1997, compelled the court to consider each of the offenses as prior convictions for career-offender purposes. *See* §1B1.3 cmt. n.8. (Sent. Tr. 28-29.) The court sentenced Garcia to 262 months' imprisonment and five years' supervised release, along with a $3,000 fine.

Garcia filed a notice of appeal, but attorney Huyck sought leave to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he could not identify a nonfrivolous basis for the appeal. *United States v. Garcia*, No. 02-4197, 86 Fed. App'x 990 (7th Cir. Feb. 5, 2004). Among other potential arguments, Huyck considered challenging this court's decision to bar cross-examination about Williams's mental-health history. The Seventh Circuit agreed with

Huyck that the challenge would be frivolous because, "[e]ven assuming that fuller cross-examination would have caused the jury to completely disregard Williams' testimony," given coconspirator Kinsey's testimony, along with the more than twenty tape-recorded conversations of Garcia discussing drug deals, the purported error would not have affected the verdict. *Id.* at 992.

Garcia filed a response to attorney Huyck's *Anders* brief, arguing that Huyck had rendered ineffective assistance by failing to employ a psychiatric expert to explain why Williams's mental health should be a subject for cross-examination. The Seventh Circuit declined to rule on the issue, which it found more appropriate for consideration in a § 2255 motion. *Id.* at 992-93. According to the court, though,"the lack of prejudice would seem to answer the contention." *Id.* at 992.

Garcia's petition for rehearing was denied on April 22, 2004. He timely filed his *pro se* § 2255 motion on April 21, 2005.

## II. LEGAL STANDARD

Federal prisoners may challenge their detention if their conviction or sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal citation and quotation marks omitted); *see* 28 U.S.C. § 2255. If this court determines that such a defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

In addition, after reviewing the Petitioner's motion, the government's response, and any record of prior court proceedings, the court will determine whether an evidentiary hearing is required. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [court] must dismiss the motion . . . ." Rule 4(b) of the Rules Governing Section 2255 Proceedings; *see also Almonacid v. United States*, 476 F.3d 518 (7th Cir. 2007).

**III. ANALYSIS**

Garcia challenges his conviction and sentence on two grounds. First, he argues that he should not have been sentenced as a career offender under the guidelines. (Pet'r's Br. 3-6, 9-11.) Second, he argues that his attorney rendered ineffective assistance by failing to investigate and research the career-offender issue and by failing to secure a psychiatric expert to aid his effort to discredit Williams's testimony. (*Id.* at 6-9, 11-12.)

    A. <u>Sentencing as a Career Offender Under the Guidelines</u>

Garcia argues that, because his prior drug-trafficking convictions were for acts that were part of the same course of conduct as the conspiracy alleged in the indictment, they should not have been considered additional "strikes" in the court's career-offender analysis. (Pet'r's Br. 4-5.) According to Garcia, because there was evidence that the charged conspiracy existed in 1993, before the dates charged in the indictment, the court should have treated his 1993 and 1994 offenses as part of the same common scheme or plan. (*Id.* at 5.) The government responds that, because the 1993 and 1994 offenses involved different types and amounts of drugs as the

offenses of conviction, they are not part of the same course of conduct. (Resp't's Br. 3.) And, says the government, Garcia's coconspirators' purported involvement in those offenses should not alter their effect on his career-offender status. (*Id.*)

The court notes that this issue was fully developed during the sentencing hearing; Garcia (if not his attorney) clearly could have raised it on direct appeal in his response to his attorney's *Anders* brief. Garcia has not offered a reason why he failed to do so, nor has he explained how he would be prejudiced by the operation of procedural default. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Nevertheless, because the government waived a procedural default argument, the court will briefly explain why Garcia's argument fails on the merits. *See Buggs v. United States*, 153 F.3d 439, 444 (7th Cir. 1998).

As relevant here, to be considered a career offender under the guidelines Garcia must have committed the offenses of conviction "subsequent to sustaining at least two felony convictions" for drug offenses. *See* U.S.S.G. § 4B1.2(c). The Seventh Circuit has explained, however, that "the 'subsequent' offense need not be *entirely* subsequent to preserve the relation between the guideline and its animating policy of punishing the recidivist more severely. Continuing to participate in [a] drug conspiracy after having been convicted of a drug offense manifests a propensity for recidivism as plainly as if the conspiracy had been started from scratch." *United States v. Belton*, 890 F.2d 9, 10 (7th Cir. 1989). Accordingly, in a conspiracy case, the offense of conviction will be considered "subsequent" if "the part of the conspiracy that preceded the prior conviction could be lopped off without affecting [the defendant's] guilt." *Id.* at 11.

Here, Garcia had two felony drug convictions as of July 19, 1993. That was his first strike. While on probation for those convictions, on April 26, 1994, he was arrested and subsequently convicted for another felony drug offense. That's strike two. Technically, Garcia did not receive his second strike for that offense until the conviction date in 1997, when the charged conspiracy in the offense of conviction already was underway. But it is not reasonable to treat it as anything other than a separate strike. Following that conviction—and the attendant second warnings to clean up his act—Garcia again engaged in drug transactions in November 1998. That's strike three. And, because Garcia's involvement in the conspiracy from 1995 until early November 1998 could be "lopped off" without affecting his guilt, his convictions that preceded the November 1998 deals count as separate strikes. *See Belton*, 890 F.2d at 11.

*United States v. Garecht*, 183 F.3d 671 (7th Cir. 1999), does not suggest otherwise. There the Seventh Circuit ruled, over a dissent, that the government's decision to indict a defendant in a marijuana-trafficking conspiracy lasting from 1988 to 1993 precluded the use of the defendant's 1992 cocaine conviction in the court's career-offender calculation. Of critical importance to the panel's decision was the fact that it could not conclude whether the defendant had, in fact, committed the marijuana offense after he was arrested for the cocaine offense. *Garecht*, 183 F.3d at 674-75. That is not the case here. After his 1993 and 1997 convictions for felony drug offenses, Garcia again involved himself in the drug trade. "After each strike, a felon has the chance to stop committing crimes and to turn his life around. If a felon wastes that opportunity twice, the Sentencing Guidelines dramatically increase his sentence for the third strike." *Id.* at 678. Garcia wasted that opportunity twice; whether or not he did so with the same

type and quantity of drugs, the same people, and in the same way, simply does not matter for the career-offender calculation.

### B. Ineffective Assistance of Counsel

As a preliminary matter, this court agrees with Garcia that the government's response to this claim is perfunctory at best. First, the government argues that the claim is procedurally barred because the issue of ineffective assistance of counsel "was already raised and decided on direct appeal." (Resp't's Br. 4-5.) Not so. The Seventh Circuit declined to rule on the issue when Garcia raised it in his response to his attorney's *Anders* brief; indeed, the appellate court informed Garcia that it would be more appropriate to raise the claim in a § 2255 motion. *Garcia*, 86 Fed. App'x at 992-93; *see Massaro v. United States*, 538 U.S. 500 (2003). Second, without identifying the grounds for Garcia's claim, the government offers only the vague, conclusory statement that Garcia "presented absolutely no evidence . . . that his counsel should have made certain strategic decisions that would have altered the outcome of his trial or sentencing hearings." (Resp't's Br. 6.) Given the multiple extensions of time this court granted the government, it has no excuse for failing to read the Seventh Circuit's decision and to actually engage with Garcia's arguments.

Nevertheless, this court has an independent obligation to screen Garcia's motion, and it is clear that Garcia has not made a threshold showing that he is entitled to a hearing on his claim. To show that his attorney's assistance was ineffective, Garcia must establish that 1) his attorney's performance was objectively unreasonable, and 2) there is a reasonable probability that, but for his attorney's purported errors, the result of the proceeding have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To pursue his theory that attorney Huyck

failed to conduct an adequate investigation, Garcia must articulate "in a sufficiently precise" manner "what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).

Garcia's first ground for his ineffective assistance claim is that attorney Huyck did not conduct an adequate investigation into Garcia's potential career-offender arguments, and that this purported failure deprived Garcia of any leverage in negotiating a plea deal with the government. (Pet'r's Br. 7.) He also faults attorney Huyck for purportedly failing to cite any cases on the issue at sentencing. (*Id.*)

Garcia has not shown that his attorney's performance was objectively unreasonable. In particular, Garcia has not explained how the career-offender argument could have been improved, nor what Huyck could have discovered that would have convinced the government to offer him a favorable plea deal. *See Richardson*, 379 F.3d at 488. Indeed, at sentencing Garcia's attorney made the same argument Garcia advances here, and he cited and constantly referred to the *Garecht* decision. Garcia suggests that his attorney should have cited *United States v. Belton*, 890 F.2d 9 (7th Cir. 1989), but, as explained above, that case does not support his position. Additionally, Garcia has not shown that, but for his attorney's purported errors, the outcome of plea negotiations or sentencing would have been different. As explained above, Garcia clearly qualifies as a career offender.

As a second ground for his claim, Garcia argues that his attorney was deficient for failing to seek a continuance so that he could examine Williams's PSR and medical history and hire a psychiatric expert. According to Garcia, had attorney Huyck done so, he could have persuaded

the court that Williams should be cross-examined about his mental-health history, and that line of questioning would have discredited his testimony. (Pet'r's Br. 7.)

Leaving aside the question whether Huyck's performance was deficient in this regard, Garcia cannot show that, but for this purported error, the outcome of his trial would have been different. *See United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (court may bypass first prong of *Strickland* if prejudice has not been established). First, Garcia has not made a threshold showing that an expert would have, in fact, discredited Williams's testimony. Second, even under Garcia's best-case scenario, the cross-examination would have caused the jury only to discount Williams's testimony. But, as the Seventh Circuit noted, the jury still would have found Garcia guilty based on Kinsey's testimony, along with the more than twenty phone calls capturing him discussing drug deals. *Garcia*, 86 Fed. App'x at 992. Accordingly, Garcia cannot show that he was prejudiced by his attorney's purported error.

**IV. CONCLUSION**

For the foregoing reasons, Garcia's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED. This case is closed.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: September 29, 2008